McKELVIE, District Judge,
dissenting.
I agree that the district court should grant summary judgment in favor of John Hancock. However, I believe that this court should remand the claims against Capital Health for further proceedings.
One could summarize the facts in this case as follows. Capital promised its employees, including Dr. Curcio, a package of benefits. Capital promised to set up a plan, to provide free life and AD & D insurance through the plan, and to make available the opportunity to purchase supplemental insurance. Capital named itself the “Plan Administrator,” and took on the responsibility of describing the terms of the plan to the beneficiaries. Capital negotiated an insurance contract with John Hancock. Hancock had no direct contact with the beneficiaries. Capital collected payments from the employees, added its own contribution, and sent Hancock a lump sum payment every month. The plan owns no relevant assets other than its contract with Hancock. Dr. Curcio purchased as much life and AD & D insurance as was available, and named his -wife as beneficiary. Mrs. Curcio alleges, and Capital denies, that the supplemental insurance Capital promised to make available includes an additional $150,000 of AD & D coverage. Regardless of what Capital may have promised its employees, Hancock’s contract with Capital does not obligate Hancock to pay supplemental AD & D benefits.

Procedural Posture and Standard of Review

In the district court, the parties filed motions for summary judgment. The parties also stipulated that the district court could adjudicate all claims based solely on the written record without a trial, including the resolution of any material issues of fact. The district court found as a matter of law that Capital is not liable and Hancock is liable. The district court then entered summary judgment in favor of Mrs. Curcio and against Hancock, and in favor of Capital. The district court did so without resolving the remaining issues of fact.
Entry of summary judgment is only appropriate if when viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact such that a reasonable factfinder could return a verdict for that party. Maj. op. at 231. This court’s review of an order granting summary judgment is plenary. Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 132 (3d Cir.1993), cert. denied, — U.S.-, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993). If genuine issues of material fact remain unresolved, they should be resolved by the trier of fact. The district court is the trier of fact in this case. An appellate court should not act as the factfinder, even where all evidence comes from documents. See Fed.R.Civ.P. 52(a) (“Findings of fact [by a trial judge], whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous....”).

Enforcement of Plan Benefits

Mrs. Curcio argues that Capital promised to make available $150,000 in supplemental AD & D coverage, and that this promise is enforceable under the benefits enforcement section of ERISA. See 29 U.S.C. § 1132(a)(1)(B) (“A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan_”). Capital argues that it did not *240 make such a promise, and that in any event its promises are unenforceable because Capital is neither a plan nor a fiduciary. The district court, relying on Gelardi agreed with Capital that ERISA permits liability only against plans and fiduciaries. See Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1324-5 (9th Cir.1985).
I believe that ERISA does permit a person to sue an employer to enforce contractual promises made by the employer, regardless of whether or not the employer is a plan or a fiduciary. See Murphy v. Heppenstall Co., 635 F.2d 233 (3d Cir.1980) (enforcing contractual rights against an employer where the plan is not a party), cert. denied, 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982). None of the sections of ERISA cited by the Gelardi court give any limitation on who may be sued. See Lee v. Prudential Ins. Co. of America, 673 F.Supp. 998, 1003 (N.D.Cal.1987). Indeed, 29 U.S.C. § 1132(d) expressly contemplates that a person other than a plan may be held liable. One of Congress’ primary purposes for enacting ERISA is “to protect contractually defined benefits.” Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113, 109 S.Ct. 948, 966, 103 L.Ed.2d 80 (1989). I believe that permitting employees to sue their employers for allegedly breaking promises relating to a benefits plan is neither novel nor contrary to Congress’ intent. See Sprague v. General Motors Corporation, 768 F.Supp. 605, 612 (E.D.Mich.1991).
There is a genuine issue of fact regarding whether Capital promised to supply the Curcios with $150,000 of AD & D coverage. The task of determining the terms of a plan, and interpreting those terms, should be left in the first instance to the trial court. See Alexander v. Primerica Holdings, Inc., 967 F.2d 90, 96 (3d Cir.1992). I would therefore remand the case to the district court for further findings of fact.

Equitable Estoppel

I disagree with the majority’s decision to grant summary judgment against Capital on the equitable estoppel cause of action. Mrs. Curdo has not established that there is no genuine issue of material fact as to all elements of this claim.
An ERISA beneficiary may recover benefits under an equitable estoppel theory “upon establishing a material representation, reasonable and detrimental reliance upon the representation, and extraordinary circumstances.” Smith v. Hartford Ins. Group, 6 F.3d 131, 137 (3d Cir.1993); cf. Restatement, Second, Contracts § 90 (common law doctrine of promissory estoppel). Mrs. Curdo testified by affidavit that in the fall of 1990 her husband told her that he had seen a video tape at work, the video tape described his insurance benefits, and it was his understanding that these benefits included extra AD & D insurance. The majority finds that the representations made on this tape were material, that the Curcios reasonably relied on these representations to their detriment, and that extraordinary circumstances exist in this case. The district court did not make findings on these questions.
A trier of fact could find that it would not be reasonable for the Curcios to rely on the representations in the video presentation. The majority quotes from a pamphlet which Capital distributed to its employees. Maj. op. at 236-37. A section of this pamphlet, titled “GROUP LIFE & AD & D Insurance Coverages,” contains a subsection titled “An Opportunity to Purchase Supplemental Amounts of Insurance Coverages.” The first sentence of this subsection states, “Through Choice Plus, you can purchase additional amounts of Group Life insurance at low group rates.” There is no mention of any opportunity to purchase additional amounts of AD & D. Louise Reich, an employee of Capital, testified by affidavit that Dr. Curcio would have received a copy of a “Physician Fringe Benefit Summary.” The Summary states that a physician may purchase “additional supplemental life,” but does not mention any opportunity to purchase additional AD & D. A trier of fact may, or may not, find it reasonable to rely on one’s memory of a taped presentation which may be in conflict with written materials.
To establish the elements of detrimental reliance, a plaintiff must show that the defendant’s representations induced action or for *241 bearance, and that the plaintiff was harmed by this action or forbearance. Restatement, Second, Contracts § 90; see also Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1319 (3d Cir.1991), cert. denied, 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991). Mrs. Curcio has failed to present any evidence of detrimental reliance. The majority, finding that the Curdos did detrimentally rely on Capital’s representations, seems to employ the following reasoning: Mrs. Curcio testified that she and her husband believed they had the opportunity to purchase supplemental AD & D insurance through Capital’s benefits program. Therefore, they had the opportunity to purchase additional insurance through an independent insurance carrier. Therefore, they would have purchased additional AD & D coverage if only they had known that the death benefits provided by Hancock totalled $250,000, and not $400,000. See Maj. op. at 237.
As in Smith, there is no evidence that the Curdos could have obtained AD & D coverage from an independent insurance carrier. Cf. Smith, 6 F.3d at 137 (“the Smiths’ conclu-sory allegations that they could have obtained alternative coverage, without more, were insufficient to withstand summary judgment”). Furthermore, there is no evidence that the Curdos had any intention of seeking insurance from an independent carrier. Mrs. Curcio has not proven that representations in the video tape caused detrimental reliance; there is no evidence that the representations induced any act or forbearance.
The majority concludes that extraordinary circumstances, exist in this case, in part because it finds that the inconsistent positions taken by the defendants after Dr. Cureio’s death forced Mrs. Curcio to embark on a roller coaster ride of anguish. Maj. op. at 237-38. Several aspects of this portion of the majority’s opinion are troubling. First, there seems to be no standard for determining what makes an event “extraordinary,” nor does the majority attempt to define a standard. It appears that when courts first recognized equitable estoppel as a cause of action in ERISA cases, the element of “extraordinary circumstances” was added in order to protect the actuarial soundness of pension funds. See Rosen v. Hotel and Restaurant Emp., Etc., 637 F.2d 592 * 598 (3d Cir.1981), cert. denied, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); Phillips v. Kennedy, 542 F.2d 52, 55 n. 8 (8th Cir.1976). In a case where a fund is a defendant, a court could at least balance the desire to make the plaintiff whole against the need to ensure that the fund had sufficient assets to satisfy its obligation to future claimants. Here, where no fund is involved, the nebulous term “extraordinary” loses what definition it had, as there is no longer any stated purpose for the existence of the element.
Second, the case for finding extraordinary circumstances seems rather weak. In support of its conclusion that extraordinary circumstances exist, the majority makes the following arguments: (1) Capital misrepresented the Curcio’s insurance coverage; (2) Capital repeated that mistake after Dr. Cur-cio died; (3) Hancock made the same mistake after Dr. Curcio died; (4) these mistakes caused Mrs. Curcio to experience- anguish; and (5) for a while, Capital attempted to help Mrs. Curcio recover the disputed $150,000 from Hancock. See Maj. op. at 237-39. As every plaintiff in an estoppel case must prove detrimental reliance on a material representation, the fact that Capital made a misrepresentation could not possibly be an extraordinary event. The fact that Capital repeated its mistake after Dr. Curcio died may be unfortunate, but it is beyond dispute that at that point it was too late to make other insurance arrangements. There is no evidence in the record that Mrs. Curcio suffered anguish, or any other harm, from the mistakes made after Dr. Curcio’s death. It seems strange to penalize Capital for mistakes made by Hancock, and even stranger to penalize Capital for attempting to help Mrs. Curcio recover the benefits she claimed.
Third, the existence of extraordinary circumstances should be determined by the trier of fact. See Smith, 6 F.3d at 142. I do not think that the circumstances identified by the majority are so extreme in this case as to warrant this court finding that extraordinary circumstances exist.
Finally, even if Mrs. Curcio could prove all elements of her estoppel claim, the recovery *242 may be less than $150,000. Full enforcement of a promise is often appropriate in an estop-pel case. However, depending on the facts of the case, it may be appropriate to limit the recovery. See Restatement, Second, Contracts § 90 Comment d. Equitable estoppel is an equitable doctrine, and. is subject to the discretion of the trial court. See Bechtel v. Robinson, 886 F.2d 644, 647 (3d Cir.1989) (“when a trial court makes an equitable assessment after the operative facts are established, we review that assessment for abuse of discretion.”); Plucinski v. I.AM. Nat. Pension Fund, 875 F.2d 1052, 1053 (3d Cir.1989) (“because the district court did not address the equities ... we remand for a development of the record, and for the district court to exercise its equitable discretion”).

Misrepresentation

The majority states, correctly, that “a plan administrator may not materially misrepresent, either negligently or intentionally, modifications to an employee pension benefits plan.” Maj. op. at 238. The majority then finds that Mrs. Curdo established her claim for negligent misrepresentation. The majority makes no attempt to show why summary judgment is appropriate on the issue of whether or not Capital made its representations negligently or intentionally. The trier of fact should determine these questions in the first instance.
Furthermore, even if Mrs. Curdo does establish all elements of this cause of action, it is far from clear that she should receive an award of $150,000. The amount of damages for negligent misrepresentation by a fiduciary is not necessarily measured by the content of the misrepresentation, but by the damage caused to the beneficiary or by the profit received by the fiduciary as a result of the misrepresentation. Restatement, Second, Trusts § 205 Comment a. There is no evidence that Capital gained by its representations. As discussed above, there is also no evidence that Mrs. Curdo would have received greater death benefits but for Capital’s misrepresentations. Therefore, it is inappropriate to direct the district court to award $150,000 on this claim on a motion for summary judgment.

Conclusion

The trial court granted Mrs. Curcio’s motion for summary judgment against Hancock, and granted Capital’s motion for summary judgment against Mrs. Curdo. The majority disagrees with both decisions, yet instead of reversing both decisions it purports to aftirm the judgment in favor of Mrs. Curdo and reverse on the question of which defendant loses. I would reverse both grants of summary judgment, direct that summary judgment be entered in favor of Hancock and against Mrs. Curdo, and remand for further proceedings on Mrs. Curcio’s claims against Capital.
I respectfully dissent.